Michael Arthur DONOVAN, Plaintiff-Appellee,

v.

Earl REINBOLD and Harley Askew, Defendants-Appellants.

Michael Arthur DONOVAN, Plaintiff-Appellant,

v.

Earl REINBOLD and Harley Askew et al., Defendants-Appellees.

Nos. 23622, 23671.

United States Court of Appeals, Ninth Circuit.

Oct. 5, 1970.

As Modified on Denial of Rehearing Nov. 27, 1970.

Joseph A. Wheelock, Jr. (argued), Max L. Gillam, of Latham & Watkins, Los Angeles, Cal., for Earl Reinbold and Harvey Askew et al.

L. A. Newlan, Jr. (argued) of Newlan, Shapiro & Bailey, Los Angeles, Cal., for Michael Arthur Donovan.

Before KOELSCH and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.

HUFSTEDLER, Circuit Judge:

Two municipal police officers, Chief Earl Reinbold and Lt. Harley L. Askew of the Santa Monica Police Department, appeal from a judgment awarding $5000 damages to plaintiff Donovan on his civil rights complaint against them. (42 U.S.C. § 1983.) The complaint, *inter alia*, charged that Reinbold and Askew, acting under color of state law, caused Donovan's loss of public employment as a lifeguard in retaliation for Donovan's exercising his First Amendment rights to express himself by authoring newspaper articles concerning activities on the Santa Monica beaches.[1]

---

* Hon. Bruce R. Thompson, United States District Court Judge for the District of Nevada, sitting by designation.

1. The opinion of the district court is reported as Donovan v. Mobley, 291 F.Supp. 930 (C.D.Cal.1968).

Donovan cross-appeals from a judgment dismissing the same complaint against two other defendants, Robert G. Cockins and Robert D. Ogle, who were, respectively, City Attorney and Assistant City Attorney of Santa Monica. His complaint charged that Cockins and Ogle contributed to his loss of employment by advising Reinbold and Askew that a decision of the City's personnel board, holding Donovan's discharge unjustified, was not binding and further charging that that advice was motivated by Cockins' and Ogle's desire to punish him for writing the newspaper articles. The district court held, as a matter of law, that Cockins and Ogle were immune from liability under 42 U.S.C. § 1983.[2]

### I.

Askew and Reinbold contend that: (1) Donovan's action was barred by limitations, (2) the evidence was insufficient to support the district court's finding that Donovan was discharged and not rehired because of his newspaper writing, (3) even if his writing were the cause of his loss of employment, at least part of the writings were outside constitutional protection and provided justification for a refusal to reinstate Donovan, (4) both defendants were immune from liability, and (5) the finding of damages was clearly erroneous.

Defendant police officers argue that the district court erred in holding that limitations did not bar Donovan's action against them in that: (1) the applicable limitations period is set by the California Tort Claims Act (Cal.Gov't Code § 810 et seq.), including the claims procedures explicated in sections 905, 911.2, 945.4, and 945.6 of the Government Code, with which Donovan did not comply; and, alternatively, (2) at least part of Donovan's claim was barred by the provisions of section 338(1) of the California Code of Civil Procedure.

In Smith v. Cremins (9th Cir. 1962) 308 F.2d 187, we held that the limitations statute applicable to a Civil Rights Act case arising in California and there being tried was section 338(1) of the California Code of Civil Procedure, limiting to three years the commencement of an action "upon a liability created by statute." Askew and Reinbold ask us to abandon Smith, because after that case was decided, California enacted the Tort Claims Act, the claims procedure and limitations provisions of which, they argue, should control. We reject their argument, disapprove Williams v. Townsend, 283 F.Supp. 580 (C. D.Cal.1968) sustaining their position, and adhere to Smith. (Accord, Willis v. Reddin (9th Cir. 1969) 418 F.2d 702.)

The California Tort Claims Act was the legislative response to the decision of the California Supreme Court in Muskopf v. Corning Hospital District (1961) 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457, abrogating common law governmental immunity from tort liability. That Act abolished all court declared and common law based forms of tort liability of public entities in the state, with some exceptions, and substituted therefor a statutory system of liability and immunity, together with a procedural scheme to enforce the system. The claims and limitations provisions are an integral part of that statutory scheme.

Reinbold and Askew argue that we should incorporate into the Civil Rights Act the limitations and claim provisions of the Tort Claims Act, instead of the limitation prescribed by section 338(1), because the causes of action to which the Tort Claims Act applies provide a closer analogy to a claim for relief under the Civil Rights Act than do the causes of action to which section 338(1) applies. The assumed analogy between the federal right created by the Civil Rights Act and the state created remedies and immunities found in the Tort Claims Act is ephemeral. As Mr. Justice Harlan observed concurring in Monroe v. Pape (1961) 365 U.S. 167, 196, 81 S.Ct.

---

2. Judge Pregerson, who authored Donovan v. Mobley, did not decide the motion to dismiss the Cockins-Ogle action.

473, 488, 5 L.Ed.2d 492 "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right."

Congress has not evinced any intention to defer to the states the definition of the federal right created in section 1983, or to adopt the states' remedies or procedures for the vindication of that right. It has never indicated an intent to engraft onto the federal right state concepts of sovereign immunity or of state susceptibility to suit, which are the concepts that are the roots of the California Tort Claims Act. Indeed, the history of section 1983, summarized in Monroe v. Pape, supra, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, vividly demonstrates that state concepts of sovereign immunity were alien to the purposes to be served by the Civil Rights Act. (*See also,* Beauregard v. Wingard (S.D.Cal. 1964) 230 F.Supp. 167, 173.) An incorporation of such state created policies "would practically constitute a judicial repeal of the Civil Rights Act." (Hoffman v. Halden (9th Cir. 1959) 268 F.2d 280, 300; Jobson v. Henne (2d Cir. 1966) 355 F.2d 129.)

Accordingly, we reaffirm our decision in *Smith,* holding that the applicable limitations statute is California Code of Civil Procedure section 338(1).

█ We now turn to defendants' contention that at least part of plaintiff's action is barred even by section 338(1). Donovan brought his action on March 16, 1967. He was discharged on April 6, 1963. Any action Donovan may have had arising from his dismissal is barred by the three-year statute of limitations. But Donovan won an order for reinstatement from the City of Santa Monica Personnel Board on April 15, 1964, and was refused reinstatement the next day. The district court decided that an action based on that refusal to reinstate was a cause of action independent of his claim based on his original discharge, and that the former was not barred by limitations. We agree with the district court. (*Cf.* Walsh v. Chicago Bridge & Iron Co. (N.D.Ill.1949) 90 F.Supp. 322.)

█ On the merits, Askew and Reinbold strenuously argue that the fourth in the series of newspaper articles written by Donovan exceeded the bounds of constitutional protection afforded a public employee, as those lines were suggested in Pickering v. Board of Education (1968) 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. Pickering was a teacher who was fired for writing and publishing in a newspaper a letter criticizing the Board of Education and the school superintendent. The Court held that the First Amendment protects public employees from loss of employment as a result of their comment upon matters of public interest. It also indicated that that protection might not be as extensive for public employees as it is for the general citizenry under New York Times Co. v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. A public employee's expression of false statements might be beyond First Amendment protection if the particular expression inhibits the efficient discharge of the employee's duties, or if the employee's position lends substantially greater credence to the expression than would be accorded to that of a member of the general public.

█ The fourth article was somewhat less innocuous than its predecessors. In it, Donovan implied that the police were arresting and firing lifeguards on trumped-up charges and that "the guard service is being used as a scapegoat to place other city departments in a better light; the pot calling the kettle black, so to speak." Assuming, *arguendo,* that the statements were both false and libelous, the article nevertheless fell within the protection of the First Amendment.

*Pickering* makes clear that it is the nature of the employment that defines the extent to which the otherwise protected publications of employees may be constrained. The less important to the job

is personal loyalty or the confidence of superiors, the weaker is the argument that special restrictions upon criticisms are proper. (391 U.S. at 570, 88 S.Ct. 1731, 20 L.Ed.2d 811.) The less likely it is that the public will attach special importance to the statements made by someone in a particular position, the weaker is the argument that the state needs special restrictions on false or erroneous statements made by someone in that position to prevent substantial deception of the public. (391 U.S. at 574, 88 S.Ct. 1731, 20 L.Ed.2d 811.)

Nothing about Donovan's job as a lifeguard brings him within the exception suggested in *Pickering*. We conclude that the fourth article was constitutionally protected and that it could not be used to justify refusal to reinstate him.

■ Askew's and Reinbold's contention that their position as police officers rendered them immune from liability under section 1983 is frivolous. (Monroe v. Pape, *supra,* 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492; York v. Story (9th Cir. 1963) 324 F.2d 450, cert. denied (1964) 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659.)

■■ The last contention of Askew and Reinbold requiring discussion is their attack on the finding awarding $5000 damages. Compensatory damages awardable in a Civil Rights Act case are not limited to the out-of-pocket pecuniary loss the complainant suffered. Damages can also be awarded for emotional and mental distress caused by the intentional tort. (Antelope v. George (D.Idaho 1962) 211 F.Supp. 657; Solomon v. Pennsylvania R. Co. (S.D.N.Y. 1951) 96 F.Supp. 709; *see also* Hague v. C.I.O. (3rd Cir. 1939) 101 F.2d 774, 789, modified on other grounds, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Basista v. Weir (3d Cir. 1965) 340 F.2d 74, 84–88.) The district court found that Donovan was unusually dedicated to his job and that it meant more to him than simply a means of livelihood. It found that Donovan had tried to find similar employment in the same general area and had been unable to do so. We cannot say that the evidence, including the evidence of Donovan's emotional distress resulting from his loss of employment, was insufficient to sustain the court's finding that Donovan had sustained compensatory damages in the sum of $5000.

II.

On his cross-appeal, Donovan contends that the district court erred in dismissing the action against Cockins and Ogle. The latter assert that the district court correctly decided as a matter of law, that they were immune from liability under section 1983, on two alternative theories: (1) their legal advice to Reinbold and Askew, acting in their official capacities as City Attorney and Assistant City Attorney, respectively, was a quasi-judicial function protected under the familiar judicial immunity doctrine, or (2) their legal advice was given in the performance of discretionary duties committed to them in their official capacity and, therefore, they were immune from liability.

■ Although the Civil Rights Act contains no provision for any immunity, the courts have read into the Act immunity for judges performing their judicial functions and immunity for court attachés whose acts are intimately connected with the judicial process. (E.g., Haldane v. Chagnon (9th Cir. 1965) 345 F.2d 601; Agnew v. Moody (9th Cir. 1964) 330 F.2d 868; Harmon v. Superior Court (9th Cir. 1964) 329 F.2d 154.)

■ Cockins and Ogle cite no authority, and we are aware of none, extending quasi-judicial immunity to a lawyer in a public law office giving legal advice to a public entity in respect of matters that are not the subject of pending litigation. The purpose of according judicial immunity is to protect the integrity of the judicial process. It is not to shield lawyers or judges from liability for the invasion of another's federally secured constitutional rights, when the alleged invasion did not occur during the performance of acts that are an integral part of the judicial process. (Robichaud

v. Ronan (9th Cir. 1965) 351 F.2d 533, 536.) We have no occasion in this case to chart all of the acts of public lawyers that are within and without the process of litigation. We are concerned only with the acts of Cockins and Ogle. Advice by a lawyer that his client ignore an order of an administrative agency directed to the client is not an act that can be considered as done during the litigation process. Such an act does not protect the integrity of quasi-judicial process. We decline to extend quasi-judicial immunity to include the acts of Cockins and Ogle.

Their alternative contention is that state officials are immune from liability for discretionary acts done within the scope of their authority. Silver v. Dickson (9th Cir. 1968) 403 F.2d 642 and Hoffman v. Halden (9th Cir. 1959) 268 F.2d 280 cautiously extend immunity to some state officials performing some kinds of discretionary acts.[3] Thus in *Silver*, immunity was extended to members of a state parole board in the performance of their discretionary duties in denying parole. In *Hoffman*, immunity was recognized for a jailor or keeper who refused to release a prisoner held on warrant or commitment. Neither case stands for the broad principle that all public officials are immune from Civil Rights Act liability if their acts were discretionary and were done within the scope of their official duties.

Donovan charged that Cockins and Ogle advised Askew and Reinbold that they were not bound by the order of the Personnel Board recommending Donovan's reinstatement. The order was valid on its face. The advice was contrary to the provisions of section 1110 of the Charter of the City of Santa Monica.[4]

Had a similar order been entered by a court, would there be any doubt that advice by a city attorney that the order be disregarded would exceed the permissible limits of discretion committed to the attorney to which the immunity doctrine would be extended? We think not. As we observed in *Hoffman*: "Obviously no immunity should be granted to the officials who wilfully disobeyed an order of court." (268 F.2d at 300.) A different result should not obtain when the order is the order of a duly constituted administrative body performing quasi-judicial functions.

Cockins and Ogle argue that, even if they were not cloaked with absolute immunity, the district court correctly absolved them from liability because their advice to the City was based on their opinion that the Board lacked jurisdiction to issue the reinstatement order. Cockins so stated in his affidavit in support of the motion for summary judgment. To the extent that Cockins' statement is relevant, it is relevant to the defense of good faith. (*See* note 3 *supra*.) Donovan, however, asserted that the motivation for the advice was punishment for his newspaper writing. Triable issues of fact are explicit on this record; they could not be resolved on summary judgment.

The judgment against defendants Reinbold and Askew is affirmed. The

---

3. The Supreme Court has never adopted this doctrine. Aside from judicial and legislative immunity, the Court seems to offer public officers only the defense of "good faith." *See* Pierson v. Ray, 386 U.S. 547, 555–557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In general, limitations on plaintiff's right to bring suit which are not dependent upon the merits of the complaint, such as standing or immunity of defendants, have not met with the Court's favor, at least when the plaintiff is trying to vindicate constitutional rights. *See, e. g.,* Flast v. Cohen, 392

U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

4. Section 1110 provides that findings by the Personnel Board are final. If the Board concludes that a dismissal was without good cause, a recommendation by it of reinstatement "shall be binding upon the appointing power who forthwith shall order such reinstatement and in such event the conclusions and recommendations of the Personnel Board shall be final and no appeal may be taken therefrom."

judgment dismissing the action against defendants Cockins and Ogle is reversed and the cause is remanded for further proceedings consistent with this opinion.