**Paul Kern IMBLER, Plaintiff-Appellant,**

v.

**Richard PACHTMAN et al., Defendants-Appellees.**

**No. 72–2518.**

United States Court of Appeals, Ninth Circuit.

July 12, 1974.

Roger S. Hanson (argued) of Hanson & Milman, Beverly Hills, Cal., for plaintiff-appellant.

Richard G. Brungard, Deputy County Counsel (argued), Los Angeles, Cal., for defendants-appellees.

Before KOELSCH, HUFSTEDLER and KILKENNY, Circuit Judges.

KOELSCH, Circuit Judge:

This matter has a long history. In 1961 plaintiff-appellant Imbler was convicted on a murder charge in Los Angeles Superior Court and sentenced to death. The California Supreme Court affirmed. People v. Imbler, 57 Cal.2d 711, 21 Cal.Rptr. 568, 371 P.2d 304 (1962). Thereafter, Imbler's state habeas corpus petition was denied following an evidentiary hearing. In re Imbler, 60 Cal.2d 554, 35 Cal.Rptr. 293, 387 P.2d 6 (1963). A subsequent writ set aside the death penalty, In re Imbler, 61 Cal.2d 556, 39 Cal.Rptr. 375, 393 P.2d 687 (1964); and when the state declined to prosecute another "penalty trial," Imbler was given a life sentence.

In 1969 the United States District Court, concluding that Imbler's conviction was secured in part by testimony the prosecution knew, or had strong reason to know, was perjured, granted him a writ of habeas corpus. Imbler v. Craven, 298 F.Supp. 795, 809 (1969). We affirmed, Imbler v. Craven, 424 F.2d 631 (9th Cir. 1970), cert. denied, 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104.

Imbler then brought this suit for damages. So far as need be noticed, his allegations in substance are that the de-fendant Pachtman, the district attorney who prosecuted the criminal charges on behalf of the State of California, had knowingly, maliciously, etc., used perjured testimony to secure a conviction and hence was liable in damages for violation of his, Imbler's, civil rights. The district judge dismissed Imbler's complaint as to Pachtman without leave to amend; he ruled that Pachtman, as a prosecuting attorney, enjoyed an immunity from suit for acts committed "in the performance of duties constituting an integral part of the judicial process . . .", Marlowe v. Coakley, 404 F.2d 70 (9th Cir. 1968); see Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965); and that as a matter of law the acts complained of came within a quasi-judicial prosecutorial function to which immunity attached. Imbler appeals.[1] We affirm.

■■ The district court's dismissal of appellant's claim was consistent with our prior decisions. Ney v. State of California, 439 F.2d 1285 (9th Cir. 1971); Donovan v. Reinbold, 433 F.2d 738, 743 (9th Cir. 1970); Marlowe v. Coakley, supra; Clark v. Washington, 366 F.2d 678 (9th Cir. 1966); Robichaud v. Ronan, supra; Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964); Harmon v. Superior Court, 329 F.2d 154 (9th Cir. 1964); Sires v. Cole, 320 F.2d 877 (9th Cir. 1963). The acts of the defendant which allegedly harmed appellant occurred during prosecutorial activities which can only be characterized as an "integral part of the judicial process."[2] All involved the questioning of

---

[1]. As appears from the caption, there are several defendants. In ruling against Imbler the court directed entry of judgment immediately, R. 54(b), F.R.Civ.P. The appeal from the ensuing limited judgment is thus valid.

[2]. The dissent argues that deliberate suppression of evidence or subornation of perjured testimony is unprotected by quasi-judicial immunity because such acts, being improper exercises of prosecutorial power, are not an integral part of the judicial process; the dissent therefore concludes that our prior cases do not confer immunity when the complaint charges knowing and malicious abuse of prosecutorial power. The purported distinction undermines the purpose of the absolute immunity previously recognized, because the addition of an easy to make but difficult to prove charge of knowing and malicious prosecutorial misconduct to any complaint would suffice to require a full trial on the merits of the prosecutor's conduct while acting as a judicial officer.

More importantly, the distinction is clearly inconsistent with our prior cases. In Robichaud v. Ronan, supra, the court indicated

a witness during the 1961 criminal prosecution.[3]

■ Appellant, in effect, urges us to reject the doctrine of prosecutorial immunity and overrule a long line of this court's decisions. We decline to do so. The protection given a prosecutor acting in his quasi-judicial role protects not simply the prosecutor, but, more importantly, the effective operation of the judicial process, and hence the "common good." Because both the honest and dishonest are insulated, on occasion an injury without redress inevitably results; but, as well expressed by Judge Learned Hand:

> "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The jurisdiction for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books." Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949).

that a prosecutor's immunity is absolute when engaged in quasi-judicial activities, noting that no suit for malicious prosecution could be brought regardless of the existence of malice or even willfulness on the part of the prosecuting attorney. See 351 F.2d at 536. Equally in point is Marlowe v. Coakley, *supra*; the dissent's "monumental distinction" of *Marlowe* is spurious. The complaint there alleged that the prosecuting attorney knowingly and willfully, or with gross negligence, presented perjured testimony to the grand jury investigating plaintiff's activities and that he suppressed from the grand jury exculpating evidence within his knowledge, again willfully and deliberately. In ruling on the district court's dismissal under Rule 12(b)(6), the court necessarily had to evluate the claim assuming that the charges of willful perjury and suppression were true. Notwithstanding these allegations, the court held that the district attorney, in presenting evidence to the grand jury, was acting within the scope of his duty to advise and present information to the grand jury, and that this function is an integral part of the judicial process. In short, the dissent's approach to prosecutorial immunity has been rejected in this circuit.

3. Appellant contends the defendant engaged in non-immune police activity when he asked two police officers, seeking, during a recess in the trial, to discuss a criminal charge with the prosecution's chief witness, to wait until the end of the witness's testimony. We reject the contention. A prosecutor's request for an opportunity to complete an examination during a trial is a quasi-judicial act within the purposes of the immunity. More critically, the request to the police did not in itself deprive appellant of any civil right. Even if the defendant had then been acting in a police role, only the subsequent inducement of the testimony that the witness was trying to "straighten out," when the prosecutor had good reason to know the witness was in trouble, made the request to the officers legally relevant to appellant's civil rights; the questioning of a witness at trial is within a traditional prosecutorial function.

As indicated earlier, the issue is not *"res nova"* in this circuit.[4] The "balance between the evils inevitable in either alternative" has consistently been struck in favor of protecting honest criminal prosecution, at the expense of those injured by scoundrels,[5] by granting immunity from suit to all prosecutors.[6]

The judgment is affirmed.

KILKENNY, Circuit Judge (dissenting):

Although appellant's 22 page amended complaint, with 23 pages of exhibits, is admittedly repetitious and in places ambiguous, there is no question but that it charges appellee, Pachtman, with knowingly, wilfully and maliciously using eight different items of false material testimony in securing appellant's initial conviction. If this is true, I believe that appellee violated appellant's procedural due process rights, and that he should be stripped of his official or representative character and subjected in his person to the consequences of his individual conduct.

The Supreme Court decision in Scheuer, Adm'x. v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the most recent expression of the Court on the overall subject, convinces me that, on these charges, the appellee does not have quasi-judicial, or any other immunity. True enough, Scheuer involved state executive, rather than judicial immunity. However, the Court in Scheuer, analyzed the long history behind executive, as well as judicial immunity, and noted that there was a ". . . similarity in the controlling policy considerations in the case of high echelon executive officers and judges . . . ." (94 S.Ct. at 1691, n. 8); the policy considerations revolving, in large measure, around the continued assurance that public officials will continue to vigorously perform their public functions without threat of harassment by civil suit. All this being said, the Supreme Court went on to hold that high executive officers do not have an unqualified immunity from civil suit. The Court emphasized:

"Under the criteria developed by precedents of this Court, § 1983 would

4. The dissent's reliance on the Supreme Court's latest pronouncement on the subject of immunity, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), holding that state executive officials are not absolutely immune from suit, is misplaced. If anything, *Scheuer* tends to support our conclusion. The Court there recognized (*Scheuer* at 239 n. 4, 94 S.Ct. 1683; *see* Pierson v. Ray, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)) that the immunity of executive officers has historically "been of a more limited nature" than that of judicial officers—undoubtedly because the threat of private liability as a sanction for abuse of power is less necessary in the judicial system, which provides institutionalized systems of review to correct errors. Prosecutorial immunity is not a form of executive immunity, but rather a form of judicial immunity, Robichaud v. Ronan, *supra*, 351 F.2d at 536, designed to protect the judicial process; it attaches only to prosecutorial acts "constituting an integral part of the judicial process."

5. The reference is general and not intended as personal.

6. Appellant contends, in substance, that the district court's determination in the habeas proceeding established defendant's violation and therefore assures that an "innocent" prosecutor is not being made to face a trial and potential liability. Wholly aside from the fact that the California Supreme Court, on precisely the same facts available to the district court (the district court did not hold an evidentiary hearing and relied on the factual findings of the referee in the California Supreme Court's habeas proceeding), found there was no evidence that the prosecutor knowingly used perjured testimony, In re Imbler, *supra*, 60 Cal.2d at 565, 35 Cal.Rptr. 293, 387 P.2d 6, those determinations are not *res judicata* as to the defendant: he was not a party to the habeas proceeding. Here, as in any other § 1983 suit against a prosecutor, a determination of the claim would require a full trial. The burden and risk of that trial is precisely what the immunity is designed to prevent. If one prosecutor must face the risk of liability because of an ill-grounded exception to absolute immunity, then all potentially may, and the public purpose of the immunity is lost.

be drained of meaning were we to hold that the acts of a governor or other high executive officer has 'the qualify of a supreme and unchangeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the federal government.' Sterling v. Constantin, 287 U.S. 378, 397 [53 S.Ct. 190, 77 L.Ed. 375] (1932)." 94 S.Ct. at 1692.

If, as held in *Scheuer*, the highest executive officer of a great state is not clothed with absolute immunity and, assuming that the policy considerations behind executive immunity are similar to those behind judicial immunity, then it must necessarily follow that a prosecuting attorney, shielded only by a form of judicial immunity (Robichaud v. Ronan, 351 F.2d 533 (CA9 1965)), should not be elevated to a status which would place him above the chief executive officer of his state. Otherwise, the office of the district attorney, rather than the Constitution of the United States, becomes the Supreme Law of the Land. Of course, under our system of government, such a conclusion is clearly untenable. State officials in these circumstances should not escape the paramount authority of the Federal Constitution. I quote from Sterling v. Constantin, 287 U.S. 378, 398, 53 S.Ct. 190, 195, 77 L.Ed. 375 (1932):

> "When there is a substantial showing that the exertion of state power has overridden private rights secured by [the] Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression."

Aside from my view that *Scheuer* is controlling, the cases cited by the majority, in my opinion, are clearly distinguishable. For example, in Ney v. State of California, 439 F.2d 1285 (CA9 1971), the appellant charged the district attorney, or his deputy, with knowingly using altered tapes. The facts revealed, however, that the district attorney's deputy actually used the tapes and, there-

fore, if the district attorney could be sued at all, he would be liable only on a theory of *respondeat superior*. In *Ney*, this court stressed that the allegation of fact supporting the purported misconduct was based on ". . . much conclusionary language . . . ." 439 F.2d at 1287. In the instant case, the factual allegations charge the district attorney with engaging in specific instances of misconduct wholly reprehensible to the integrity of the judicial process.

Donovan v. Reinbold, 433 F.2d 738 (CA9 1970), is no more enlightening. There, the action was against two city police officers and two city attorneys. This court held that the doctrine of immunity from civil suit under § 1983 would not bar an action against them. Nothing in *Donovan* even remotely indicates that a civil rights action should not lie on our facts. For that matter, the opinion recognizes that:

> "[t]he purpose of according judicial immunity is to protect the integrity of the judicial process. It is not to shield lawyers *or judges* from liability for the invasion of another's federally secured constitutional rights, when the alleged invasion did not occur during the performance of acts that are an integral part of the judicial process." 433 F.2d at 743. [Emphasis supplied]

To now hold, on our facts, that the knowing, wilful and malicious use of perjured testimony to gain a conviction, even though accomplished during the course of a trial, *constitutes an integral part of the judicial process*, flies in the very face of the integrity sought to be protected by judicial and quasi-judicial immunity.

The allegations in Marlowe v. Coakley, 404 F.2d 70 (CA9 1968) charged the prosecuting attorney with ". . . knowingly and wilfully, *or with gross negligence*, present[ing] perjured testimony to the grand jury . . . ." [Emphasis supplied] Needless to say, there is a monumental distinction between charging an officer with gross

negligence in connection with the presentation of perjured testimony and charging him with knowingly, wilfully and maliciously *using* perjured testimony to obtain a conviction. Consequently, the decision of the *Marlowe* court could well rest on the failure of the complainant to clearly charge wilful misconduct in presenting the perjured testimony. *Cf.* Ney v. State of California, *supra*, 439 F.2d at 1287. The alternative does not equate with wilful action. I decline to hold that the shield of immunity should rest on the brow of a district attorney who *knowingly, wilfully and maliciously* utilizes perjured testimony to obtain a conviction. This conduct should not be condoned as an *integral part of the judicial process.*

Clark v. State of Washington, 366 F. 2d 678 (CA9 1966), recognizes the rule that a prosecuting attorney enjoys immunity under the Civil Rights Act only insofar as his prosecuting functions are concerned. At the risk of being repetitive, I again stress that appellee's acts, as charged in the amended complaint, had nothing to do with his *legitimate* prosecutory functions.

In Agnew v. Moody, 330 F.2d 868 (CA9 1964), cert. denied 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70, the court there sidestepped the contention that the doctrine of official immunity did not apply where the wrongful act was *of an extraordinary character*, as that phrase was used in Tenney v. Brandhove, 341 U.S. 367, 378–379, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), by saying, "[i]f such an indefinite exception to the immunity rule exists, we are satisfied that appellant's case does not fall within it." 330 F.2d at 869. *Scheuer, supra,* makes it clear that the doctrine of official immunity does not apply in cases where the wrongful act is of an extraordinary character.

Hilliard v. Williams, 465 F.2d 1212 (CA6 1972), cert. denied 409 U.S. 1029, 93 S.Ct. 461, 34 L.Ed.2d 322, is closely in point. There, the court, in a civil rights action, recognized the general rule that a prosecuting attorney, when acting in his official capacity, is immune from a suit for damages. The court then goes on to hold that the doctrine of quasi-judicial immunity, normally shielding a prosecuting attorney, should not be extended to the situation where a complaint charges that the officer deliberately suppressed material evidence which resulted in the conviction of the appellant. The court emphasized that such wilful conduct was ". . . outside [the officer's] quasi-judicial capacity and beyond the scope of 'duties constituting an integral part of the judicial process.' " 465 F.2d at 1218.

On the charges before us, I would hold that appellee acted entirely outside the scope of his jurisdiction and should not be permitted to shelter himself from liability by a plea that he was acting under the immunity of his office. Not to be forgotten is the high responsibility accepted by a prosecuting officer when he enters upon the duties of his office. For example: (1) he is required to recognize that in our system of justice, the accused is to be given the benefit of all reasonable doubt; (2) his decisions during the course of the prosecution must be fair to all, including the defendant; (3) he has a duty of timely disclosure to the defense of all available evidence known to him that tends to help the defendant, and (4) it is his duty to seek justice, not pervert it by placing a conviction above the constitutional rights of the accused. It is time to recognize that prosecutors are not entirely above the law which holds other individuals financially accountable for their *intentional misdeeds.*

Needless to say, I express no opinion as to the merits of appellant's claims. I only say that on the basis of the allegations in the amended complaint, he is entitled to have a full-fledged judicial inquiry.

I would reverse.