Edwin W. GOCKLEY

v.

Robert L. VanHOOVE and J. Michael Morrissey.

Civ. A. No. 69–1185.

United States District Court, E. D. Pennsylvania.

March 3, 1976.

Samuel M. Mecum, Lancaster, Pa., for plaintiff.

Frederick G. McGavin, County Solicitor, Reading, Pa., for defendants.

## OPINION

LUONGO, District Judge.

In June 1969, Edwin W. Gockley filed this suit, *pro se,* charging that defendants Robert L. VanHoove and J. Michael Morrissey, District Attorney and Assistant District Attorney, respectively, of Berks County, Pennsylvania, had violated his civil rights. The complaint charges that defendants had revived criminal indictments against Gockley, some six and one-half years after the indictments had been returned and some eight years after the alleged offenses had occurred, for the purpose of hindering Gockley's efforts in a pending habeas corpus proceeding relating to other criminal offenses for which he had been convicted. The complaint also asserts a denial of civil rights based on an injury Gockley sustained when a bench in a detention cell collapsed while Gockley was in attendance at court for a hearing relating to the revived charges. Finally, plaintiff complains that his civil rights were violated when the defendants gave the press access to files containing information about him. Suit was brought under 42 U.S.C. §§ 1983 and 1985, with jurisdiction based on 28 U.S.C. §§ 1343(3) and 1321.

On August 1, 1969, defendants filed a motion to strike or dismiss plaintiff's complaint. It is this motion which is now before me for decision. Some explanation as to why decision on the motion to dismiss has been delayed more than six years is due.

## BACKGROUND

At the time Gockley filed this suit he was in state custody and he was actively seeking habeas corpus relief from two earlier convictions which led to his imprisonment. On July 30, 1969, believing that the results of forthcoming hearings on his habeas corpus petitions would favorably affect, or at least provide evidence favorable to, the instant suit, Gockley requested a stay of proceedings in this action. Thereafter defendants filed the above mentioned motion to

strike, to which, on August 27, 1969, Gockley filed a two page "Counter-Reply to Defendants Motion to Strike." Neither was accompanied by citations of authority. On April 29, 1970, I entered an order continuing generally defendants' motion to strike, relieving the parties of the obligation to file briefs on the motion "until application is made either by counsel for the defendants or by the plaintiff." On January 4, 1971, in response to several motions by plaintiff, I entered an order, which *inter alia,* granted a further continuance.

Plaintiff was ultimately successful in his habeas corpus proceedings, and on April 19, 1972, he was released from the state penitentiary. On February 6, 1973, I terminated all continuances, and directed the parties to proceed without further delay. Papers recently filed recount the efforts made by Gockley from February 1973 through January 1975 to obtain counsel to aid him in this suit. Without commenting on the diligence or lack of diligence of those efforts, suffice to say that on February 18, 1975, present counsel entered his appearance on Gockley's behalf.

Following counsel's entry of appearance, he received a letter from the Clerk's Office similar to one sent to Gockley on February 26, 1974, directing his attention to Local Rule 23(a), as amended February 1974, which requires that:

> "Whenever in any civil action the Clerk shall ascertain that no proceeding has been docketed therein for a period of more than one year immediately preceding such ascertainment, the Clerk shall send notice to counsel of record or, if none, to the parties, that unless the Court upon written application filed within thirty (30) days from the receipt of such notice and upon good cause shown shall otherwise order, the action shall be dismissed."

Plaintiff's counsel filed such application on February 24, 1975. On April 4, 1975, I advised plaintiff's counsel to file a memorandum in support of the application, setting forth justification for the long delay. That memorandum was filed on April 23, 1975. Defendants filed a motion to dismiss pursuant to Local Rule 23(a), and a memorandum in support thereof, on May 16, 1975. On October 16, 1975, upon consideration of plaintiff's application, and after hearing argument thereon, I denied defendants' motion to dismiss the action for lack of prosecution pursuant to Local Rule 23(a), and ordered defendants to file a memorandum in support of their motion to dismiss for failure to state a claim on or before November 17, 1975, and plaintiff to respond thereto by December 8, 1975. The memoranda were filed on November 14, and December 4, respectively.

## DISCUSSION

The *pro se* Complaint which defendants attack is neat and well organized, but at times difficult to understand. The first section of the Complaint sets forth Gockley's factual allegations. Summarizing as best I can, Gockley alleged: He was arrested on November 21, 1960 and finally indicted in December 1961 on felony charges that were entirely groundless. After being tried and convicted of other unrelated felony charges, these "spurious" charges, for which Gockley had not been tried, were considered by the court in setting his sentence. From 1962 until 1968, while Gockley was incarcerated, the spurious charges were held in abeyance. In 1968, when the defendants realized that Gockley's convictions might be reversed, they revived the spurious charges against him. On June 11, 1968, Gockley was taken to Berks County Courthouse for a hearing on these charges, following which he was taken to the "bull pen detention cells" to await return to the state penitentiary. While there, a bench on which Gockley was sitting collapsed causing injury which has resulted in chronic pain and some disablement. Further, defendants opened their files pertaining to Gockley to members of the press although Gockley had requested that they not do so. Allowing the press access to the files "created unusual and exceptional circumstances" amounting to

cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

Following the factual allegations, the Complaint sets forth five separate causes of action. Plaintiff now concedes that the second, fourth, and fifth causes are not actionable. I will deal, therefore, only with the first and third claims.

The first cause of action asserts that defendants' revival of the spurious and illegal indictments against Gockley was for the purpose of harassing him and violated his Fourteenth Amendment rights to due process and equal protection of the laws, for which 42 U.S.C. §§ 1983 and 1985 provide redress. The third cause of action asserts that defendants opened their files to the press after Gockley had requested that the files be kept closed; that the press then publicly harassed him; that such publicity prior to a hearing on the voluntariness of his statements as contained in the files is prohibited; that as a result of the disclo-

sure it would be impossible to select an impartial jury to try the case; for all of which Gockley claims damages under 42 U.S.C. §§ 1983 and 1985.[1]

Defendants' motion to strike or dismiss sets forth five grounds on which the Complaint should be dismissed: (1) this court lacks subject matter jurisdiction; (2) the Complaint fails to state a claim upon which relief can be granted; (3) plaintiff has failed to exhaust state remedies; (4) the Complaint contains "scandalous, libelous and impertinent statements"; and (5) the action is barred by the statute of limitations. Defendants' memorandum in support of the motion, however, discusses only the second ground, specifically that the Complaint fails to state a claim since defendants are cloaked with prosecutorial immunity from any otherwise valid claim which the Complaint may state. Since the defendants have not sought to support the other grounds for the motion, I will consider only the single ground which they have advanced in their memorandum.

---

1. The language of the third cause of action is representative of the entire complaint, and therefore I quote the allegations of third cause in full:

"*Jurisdiction, 28 U.S.C., §§ 1331 and 1343 Title 42 U.S.C., §§ 1983 and 1985*

A. In plaintiffs third cause of action, he complains that defendants, Van Hoove and Morrissey after reviving these dead indictments to harass, opened their files to the public press who publically harassed him by exploiting all the former illegal and unlawful attacks upon his name and illegal and unlawful attacks upon his name and illegal and unlawful spurious charges brought on by a prejudicial 'group' acting under cover of the Commonwealth, even after plaintiff demanded to the Court that no publicity be forthcoming on the pretrial motions and petitions which the law forbids; i. e. on a petition to suppress statements due to involuntariness; cf. *Jackson v. Denno*, 84 Supreme Court 1774, 378 U.S. 368, 12 L.Ed.2d 908 (1964), no prior publicity is permissible, and the hearing of the involuntariness must be held separately by a judge, or jury, other than the trial jury, and out of the hearing of the public, and the records therefrom must be impounded from the public, and that any prior mention of the involuntariness hearing to the public, especially in the public press, means that when the jury (trial) is se-

lected from the newspaper reading public, they will or can assume that if any statements are offered by the prosecution, that were made by the defendant, that since the judge or other jury had ruled on the statements, and the statements were again used, that they were not only voluntary, but true, and if by that former authority, they, the trial jury, must hold the evidence as proper and conclusive, as being detrimental, and for defendants guilt, even though it may be overthrown in the appellate courts; whereas, if the public selective jury knows nothing about the involuntariness until trial, and hear the evidence, and base their verdict solely on the evidence, and not a former presumption exploited by the press, because the press always favors the strongest batallion, it will be unable for defendant to receive a fair trial. When defendant wants to go by the law and the prosecution defies that law, pro se, they must be made accountable for their defiance, and in some cases, as in the instant revival of the dead charges; the release to the press was only to taint the thinking, that if defendant was guilty to those charges associated with the revived charges, and that if he was previously found guilty, it is presumably to be thought of him as being guilty again, which in itself is, the road to an unfair trial, a journey which is wholly against the law; which is a culpable attack at, indiscreet as it is, to taint verdict."

Defendants' immunity argument is based on the *en banc* decision in *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Bauers was indicted in 1951 for escape from a juvenile reformatory and for auto larceny. He was brought before the county court where, after a brief conference with court appointed counsel, he pleaded guilty and was sentenced. After his release, Bauers applied to the county court to dismiss the 1951 indictments and to vacate the sentences on the grounds that the county court lacked jurisdiction because he was a juvenile when the offenses were committed. The application was denied by the county court, but Bauers' contention was upheld on appeal. Thereafter, Bauers instituted suit in the United States District Court against Heisel, the county prosecutor, seeking damages for deprivation of his liberty and for denial of his right to a speedy trial. The District Court dismissed the action and the dismissal was affirmed by the Court of Appeals.

Writing for the *en banc* court, Judge Staley noted that the responsibilities of the office of prosecuting attorney require that the prosecutor be accorded the same immunity as members of the judiciary, and set forth the bounds of that immunity as follows (361 F.2d at 590–91):

"The immunity of a prosecutor . . . is not without limitation; it is not absolute. The immunity of judges, from which the immunity of prosecutors is derivative, does not extend to·acts which are clearly outside their jurisdiction. In *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352 [20 L.Ed. 646], the Supreme Court established the guidelines for determining the scope of judicial immunity:

' * * * [J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. * * * Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction * * *.' "

The *Bauers* court ruled that even if the prosecutor, Heisel, knew or should have known that Bauers was a juvenile and therefore not within the jurisdiction of the county court, and that the pleas, sentences and incarceration resulting therefrom were in violation of the Constitution so as to bring the prosecutor's actions within § 1983, although the prosecutor had acted in excess of his jurisdiction, he had not "acted clearly outside of his jurisdiction," and therefore the suit was barred by the doctrine of prosecutorial immunity. The evil of the occasional unredressed abuse by a prosecutor is considered preferable to the alternative evil of subjecting "those who try to do their duty to the constant dread of retal-

iation." *See Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949).

■ The immunity of prosecutors, then, extends to acts within, although in excess of, their jurisdiction, but not to acts which are "clearly outside their jurisdiction." *See also Imbler v. Pachtman,* 500 F.2d 1301 (9th Cir. 1974), *cert. granted,* 420 U.S. 945, 95 S.Ct. 1324, 43 L.Ed.2d 423 (1975); *Cambist Films, Inc. v. Duggan,* 475 F.2d 887 (3d Cir. 1973); *Turack v. Guido,* 464 F.2d 535 (3d Cir. 1972); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972); *Bethea v. Reid,* 445 F.2d 1163 (3d Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972).

■ In the instant suit, assuming the facts alleged in the Complaint to be true, as I must on a motion to dismiss (*Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973), *cert. denied, sub nom., Smith v. Curtis,* 416 U.S. 985, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974)), but viewing those facts in the light of the language and example of *Bradley v. Fisher,* as adopted in *Bauers,* none of the defendants' acts were "clearly outside their jurisdiction." The defendant-prosecutors are, therefore, immune from suit for the acts they are alleged to have committed. It is, of course, within the jurisdiction of a prosecutor to seek and to prosecute indictments. If indictments are prosecuted ("revived") after an impermissibly long delay, for an improper purpose, the act of revival may be in excess of, but certainly is not outside the prosecutor's jurisdiction. The remedy is to seek dismissal of the charges by the court which would try the case or by an appellate court. Likewise, it is within the jurisdiction of the prosecutor to release information to the public or press relating to investigations or indictments. The prosecutor's motive may be a proper one, to inform the public, or it may be improper, to damage the reputation of the named defendant and cause him harassment. At most the improper motive may cause the disclosure to be in excess of, but not beyond, the prosecutor's jurisdiction. Finally, it is obviously within the jurisdiction of a prosecutor to bring an accused before a court for a hearing relating to pending charges. And it is clear beyond question that an *accidental* injury suffered by an accused en route to or from a hearing, caused by the possible negligence of others, states no civil rights claim whatsoever against the prosecutor.

Plaintiff advances three arguments in an effort to avoid dismissal. First, he argues that the immunity doctrine established in *Bauers* is unjustifiably broad, and he calls the court's attention to the fact that the Supreme Court has granted certiorari and has heard oral argument in *Imbler v. Pachtman, supra,* and may soon announce new restrictions on prosecutorial immunity. Whatever the future of prosecutorial immunity may be, *Bauers v. Heisel* presently states the law on the subject in the Third Circuit. Moreover, even if the Supreme Court were to reverse the Ninth Circuit's decision in *Imbler v. Pachtman,* that would not change the result in this suit. In *Imbler* the prosecutor was charged with having permitted a government witness to give testimony which the prosecutor knew, or had strong reason to know, was perjured. Such conduct is far more extreme than any charged to the defendants in the present suit. A Supreme Court decision holding that prosecutorial immunity does not extend to the knowing use of perjured testimony would not require a holding that the immunity of prosecutors is abrogated for acts of the nature here charged to defendants.

The plaintiff next argues that the Complaint includes allegations that the defendants' release of information to the press violated his Fifth, Sixth and Fourteenth Amendment rights to a fair trial by an impartial jury and the right not to incriminate himself, and, says plaintiff, such acts fall outside the jurisdiction of the district attorney. Although a district attorney is not "prosecuting," in the strict sense of the word, when he releases information to the press (and thereby to the public), he is nevertheless engaged in one of the normal functions of his office. In light of the continuing debate

over the subject of "Free Press v. Fair Trial," I find no merit in the argument that the prosecutor acts "clearly outside" his jurisdiction in opening his files to the press. Again, if a defendant in a pending criminal case has been prejudiced by the release of information, his remedy is to seek dismissal of the charges against him.

The doctrine of prosecutorial immunity, as set forth in *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967), encompasses all the acts allegedly committed by defendants, acting as prosecutors, and defendants' motion to dismiss the Complaint will be granted.

### ADDENDUM

On the day of the filing of this Opinion it was reported in the news media that the Supreme Court, by an 8–0 vote, affirmed *Imbler v. Pachtman, supra,* upholding prosecutorial immunity.