**Roy W. WEATHERS, Appellant,**

v.

**Paul EBERT, Appellee.**

**No. 74–1231.**

United States Court of Appeals,
Fourth Circuit.

Argued July 24, 1974.

Decided Nov. 13, 1974.

---

James R. Tate, Fairfax, Va. (Duvall, Tate, Bywater & Davis, Fairfax, Va., on brief), for appellant.

Robert C. Coleburn, Arlington, Va. (Benjamin Margolin, Simmonds, Coleburn, Towner & Carman, Arlington, Va., on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Roy Weathers appeals from the dismissal of his suit under 42 U.S.C. § 1983 against Paul Ebert, Commonwealth's Attorney for Prince William County, Virginia, for failure to state a claim on which relief can be granted. According to Weathers' amended complaint, Ebert, three local police officers, and other defendants conspired to deprive him of his constitutional rights by having him indicted, arrested, and brought to trial on a charge of which he had previously been acquitted. The district court held that Ebert was immune from suit, and we affirm.

I

The Supreme Court has not had occasion to rule on the immunity of prosecuting attorneys from liability for damages. It has held, though, that the common law immunity of legislators and judges from liability for their official acts applies in suits under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Relying on these precedents and on the common law, a number of courts have held that prosecuting attorneys are immune from civil suits for damages based on the performance of duties that are part of the judicial process. *E. g.*, Marlowe v. Coakley, 404 F.2d 70 (9th Cir. 1969); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Phillips v. Nash, 311 F.2d 513 (7th Cir. 1962). *But see* Imbler v. Pachtman, 500 F.2d 1301, 1304 (9th Cir. 1974) (Kilkenny, J. dissenting); Scheuer v. Rhodes, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974) (dictum).

As we noted in McCray v. Maryland, 456 F.2d 1, 3 (4th Cir. 1972), the public interest in forthright enforcement of the criminal law is best served when a state's attorney can freely decide when to prosecute, uninfluenced by the potential burden of retaliatory suits. Although that burden cannot be eliminated so long as the courts are open, it is most effectively minimized by a doctrine which allows suits to be dismissed on the basis of the complaint without exploring the underlying facts. For this reason, most courts afford the state's attorney immunity from any civil action connected with his prosecuting function. *E. g.*, Imbler v. Pachtman, 500 F.2d 1301 (9th Cir. 1974); Barnes v. Dorsey, 480 F.2d 1057 (8th Cir. 1973); Madison v. Gerstein, 440 F.2d 338 (5th Cir. 1971); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966). Traditional concepts of immunity, then, require the dismissal of Weathers' suit.

Nevertheless, Weathers urges that two recent cases support his claim. The first, Littleton v. Berbling, 468 F.2d 389 (7th Cir. 1972), vacated and remanded on other grounds *sub nom.*, Spomer v. Littleton, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974), held that immunity does not bar a suit for equitable relief designed to prevent future violations of § 1983 by a prosecutor. The court, however, granted immunity with respect to monetary damages. Since Weathers does not seek an injunction, *Littleton* is inapplicable.

The second case, Hilliard v. Williams, 465 F.2d 1214 (6th Cir. 1972), denied immunity to a prosecutor charged with the deliberate suppression of an FBI laboratory report that established the innocence of the defendant. The court reasoned that since a prosecutor's duty is to protect the innocent as well as to convict the guilty, his discretion does not extend to seeking the conviction of a person he knows to be innocent.[1] Accordingly, it held that the district court erred in dismissing the complaint.

*Hilliard* represents a real, but very limited, departure from the traditional rule of prosecutorial immunity. The complaint charged an intentional abuse of the prosecuting function which resulted in a denial of due process.[2] It supported this charge, with specific averments of the evidence concealed by the prosecutor, its exculpatory effect, and the deceitful means he used. Under the principles expressed in *Hilliard,* a complaint such as Weathers' could not be dismissed on the ground of immunity if it alleged facts showing that a prosecutor had intentionally placed the plaintiff in double jeopardy. We need not decide, however, whether to follow that case, for the complaint in this one does not meet its standards.

Weathers' complaint charges that Ebert "knew or should have known" that Weathers had been acquitted previously of the identical offense.[3] These allegations are too broad. If immunity were denied, Ebert would be burdened by defending not only against a claim of intentional abuse of his authority but also against claims that he negligently overlooked the existence of the first acquittal or mistook its legal effect. Moreover, the complaint alleges no facts

---

1. The court quoted with approval the following passage from the ABA Code of Professional Responsibility:

  "DR 7–103 Performing the Duty of Public Prosecutor or Other Government Lawyer.

  "(A) A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause.

  "(B) A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant . . . of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment." 465 F.2d at 1218.

2. *Contra*, Imbler v. Pachtman, 500 F.2d 1301 (9th Cir. 1974), in which a prosecutor was held immune from suit on a claim that he had knowingly presented perjured testimony at trial. *Accord*, Kauffman v. Moss, 420 F. 2d 1270 (3rd Cir. 1970).

3. Weathers alleged:

  "11. On or about the 3rd day of August, 1970, . . . Ebert acting individually and on behalf of . . . The State of Virginia . . . presented to the Grand Jury of Prince William County, indictment number 3836, which was returned a true bill, in spite of the fact that [he] knew or should have known that the same grand jury had on June 1, 1970, returned indictment 3778 for the identical offense, on which indictment the plaintiff was acquitted on July 23, 1970. . . .

  "12. As a direct result of the action of defendants in securing a second indictment of plaintiff for an offense for which he had previously been acquitted and in subsequently arresting plaintiff on that indictment, defendants violated plaintiff's right under the Fifth Amendment . . . not to be put twice in jeopardy of life or limb.

  "13. On May 10, 1973, plaintiff was brought to trial . . . on the second indictment, number 3836, at which time the attorney for The State of Virginia moved the Court to nolle prosequi the indictment which motion was objected to by counsel for the defendant. The Circuit Court granted the motion . . . and the indictment was dismissed."

which would support a finding of intent instead of negligent or innocent mistake. Its bare charges of malice are no substitutes for specific averments, for "[t]he immunity doctrine would be of little value if such characterization . . . could force the prosecutor to stand trial." Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973); cf. Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Since the facts set forth in this complaint do not approach the specific allegations of deliberate malfeasance which led the court in *Hilliard* to depart from the traditional rule of immunity, that case is inapplicable.

## II

■■ We also conclude that the complaint does not state a claim against Ebert for Weathers' arrest and detention. Making an arrest is a police function, not a judicial one, and Ebert would lack immunity if he were involved. Hampton v. Chicago, 484 F.2d 602 (7th Cir. 1973); Lewis v. Brautigam, 227 F. 2d 124 (5th Cir. 1955); cf. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967). Assuming, for the purpose of this decision, that the complaint alleges a violation of Weathers' constitutional rights by the police,[4] it does not connect Ebert with the arrest. His procurement of the second indictment is the single specific allegation against him, and we concluded in part I that this was insufficient. The other allegations are only general statements that he acted in concert with others.[5] These, unsupported by averments of communication, consultation, cooperation, or command, do not make him responsible under § 1983 for the acts of others. *Compare* Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2nd Cir. 1964) *with* Lewis v. Brautigam, 227 F.2d 124, 129 (5th Cir. 1955).

The judgment is affirmed.

---

4. Since this suit is still pending against the other defendants, we express no opinion as to the sufficiency of Weathers' claims against them.

5. The complaint states that in February, 1973, two local policemen, named as defendants, arrested Weathers on the second indictment without a valid warrant and took him to the county jail, where he was imprisoned for twenty-four hours. It further alleges:

"14. In addition each of the defendants, separately and in concert, acted outside the scope of his jurisdiction and without authorization of law . . . wilfully, knowingly, and purposefully with the specific intent to deprive plaintiff of his right to:

a) Freedom from illegal seizure of his person, papers, and effects;

b) Freedom from unlawful arrest;

c) Freedom from illegal detention and imprisonment;

d) Freedom from physical abuse, coercion, and intimidation."

We assume, of course, that Ebert is included among the defendants mentioned in this paragraph.