**Thomas A. KIPPS, Plaintiff,**

v.

**John EWELL et al., Defendants.**

**Civ. A. No. 74–C–93–H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Feb. 20, 1975.

E. Eugene Gunter, Winchester, Va., for plaintiff.

W. W. Wharton, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendants.

## OPINION and JUDGMENT

DALTON, District Judge.

Thomas A. Kipps, plaintiff, brings this action under 42 U.S.C. § 1983 alleging that his constitutional rights were abridged by the concerted actions of defendants: John Ewell, Commonwealth Attorney of Warren County, Virginia; Cecil Williams, Chief Deputy Sheriff of Warren County; and Gary Keyser, former Sheriff of Warren County. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1343(3) and (4). Plaintiff is seeking damages in the sum of one million dollars ($1,000,-000) plus his costs expended in bringing this action.

Plaintiff initially filed the complaint on September 26, 1974, and was allowed by leave of court to file an amended complaint on December 11, 1974. The court allowed the amended complaint to be filed because plaintiff had retained counsel to represent him in this matter after his initial pleading. As early as October 18, 1974, the defendants in separate motions entered motions to dismiss. In each motion the three grounds enumerated by each defendant in support of their motions to dismiss are: 1) lack of subject matter jurisdiction; 2) failure to state a claim upon which relief may be granted; and 3) official immunity.

In his amended complaint plaintiff makes a series of allegations concerning his arrest and trial for the murder of Juana Anne Williams[1]. The general thrust of these allegations is that the three defendants conspired together to target plaintiff as the murderer although they did not have sufficient cause to believe plaintiff culpable, and allegedly had reason to know that plaintiff could not have committed the murder. In support of this general conspiracy theory plaintiff has made several specific allegations. 1) Plaintiff first alleges that on September 26 and 27, 1973, plaintiff, who was a convicted felon serving his sentence at Camp 7 in Clarke County, Virginia, was participating in the Work Release Program at Camp 7 and without any knowledge as to the reasons he was restrained and required to remain locked up at the direction of defendant Cecil Williams. 2) Plaintiff's second allegation charges that defendant Cecil Williams swore out an arrest warrant against plaintiff on September 26, 1973, for the murder of Juana Anne Williams without having just cause, excuse or sufficient reason; that pursuant to this warrant Cecil Williams took plaintiff into custody and transported him to the Warren County Jail on September 27, 1973, whereupon Cecil Williams served the murder warrant on plaintiff; all of such action being without just cause. Plaintiff further alleges that defendant Gary Keyser also participated in these acts with the express or implied approval of John Ewell. 3) Plaintiff's third allegation claims that defendant Cecil Williams made a statement to a local newspaper "in which he stated that he had been working long days for 45 days, over 300 hours; that he had been working his head off to solve this case; and that he was going to take a well deserved vacation; such action being in deprivation of the plaintiff's constitutional rights under the due process clause." This statement was allegedly a deliberate effort to generate a prejudiced atmosphere within the community in which plaintiff was to be tried. 4) The next allegation claims that following plaintiff's incarceration in the Warren County Jail, plaintiff in his jail garb was taken from his cell under orders of the defendant Gary Keyser, lined up against a brick wall, and his picture was taken, this same picture allegedly appeared in the Warren County Sentinel a few days later and was again published during the

---

[1]. The murder of Juana Anne Williams, age 15, caused quite a sensation in the Warren County area. The body was found decomposing in a field and identification was very difficult. The police had few leads and the public demands and pressure for results were noticeable. The arrest and trial of Kipps did receive large publicity as a result.

week of plaintiff's trial. Allegedly this action was a "conscious effort to generate pretrial publicity against plaintiff when it was known that his attorneys were attempting to depress such pretrial publicity even to the extent of persuading the General District Judge to have a closed preliminary hearing." Again plaintiff alleges that defendant John Ewell expressly or impliedly approved this action.

In summation of these specific allegations, plaintiff alleges that all three defendants, jointly and severally, continued his incarceration, prosecuted him for the murder of Juana Anne Williams; interfered with and greatly damaged his parole status, caused him to undergo extreme mental anguish, when the defendants knew, or should have known that there were insufficient grounds for doing so.

The court held two pretrial conferences, on December 11, 1974, and January 21, 1975, with the plaintiff and defendants with their respective attorneys present. The conferences were held in order to acquaint the court with a full evidentiary background, to decide whether there were any genuine issues of fact in dispute; to decide whether the § 1983 immunity provisions cloaked defendants in its protection and to determine whether or not a claim upon which relief could be granted had been presented to the court. In furtherance of these objectives the court requested and received memorandums of law and affidavits from the parties.

It is clear from the records, transcripts, affidavits, and memorandums

that the following scenario reflects the investigation, arrest and trial of plaintiff for the murder of Juana Anne Williams. The badly decomposed half-nude body of Juana Anne Williams was found on August 15, 1973. Documents and dental analysis enabled the police to determine that the body was that of Juana Anne Williams from Florida who had then recently moved to Winchester, Virginia. On September 7, 1973, Sheriff Keyser received a call from an informant who told him that an inmate of Camp 7 on the Work Release Program in Clarke County had some information regarding the circumstances of the death of Juana Anne Williams—the name of the inmate given was Thomas A. Kipps.[2] The investigation of Kipps was delegated by Sheriff Keyser to Deputy Williams who went to Camp 7 to pursue this investigation. There he learned that Jesse Armentrout was considered to be Thomas A. Kipps' closest friend and participated on the Work Release Program with Kipps. Williams was able to obtain a written statement from Armentrout in which he stated that Kipps had previously killed the girl whose body was found in Warren County. (The amount of pressure placed upon Armentrout to come forth with this statement is in dispute, but there is no doubt that Armentrout has always maintained its veracity.) [3] Deputy Williams continued with his investigation and was able to establish that Kipps had been seen with the deceased shortly before the estimated time of her death.

Deputy Williams then took this information to the Commonwealth Attorney

---

2. The transcript of the preliminary hearing held in the Circuit Court of the County of Warren on October 24, 1973, reveals that two witnesses, Linda Miller and Jesse Armentrout testified that Thomas A. Kipps had stated to them at "Little Mac's" Restaurant in Winchester that he knew the identity of the at-that-time-unidentified body and knew who had killed her. (See transcript of Preliminary Hearing p. 76 and p. 79).

3. The trial transcript reveals that the defense called two witnesses, Robert Bruce Craig and Ronnie Campbell to demonstrate

the pressure placed upon Armentrout. Both were prisoners in the Warren County Jail at the time that Armentrout was there waiting to testify. Apparently in order to pressure Armentrout to testify the police threatened to charge him with the murder (page 3 of the direct testimony of Craig and page 3 of Campbell's direct testimony). However, each witness on cross-examination stated that Armentrout solely resisted testifying because Kipps was his friend and affirmed the fact that Kipps had made statements indicating his involvement in the death of Juana Anne Williams.

who advised Williams that probable cause existed for the arrest of plaintiff.

After receiving this advice from the Commonwealth Attorney, Deputy Williams called the Administrator of the Work Release Program at Camp 7 and informed him that he was about to swear out a murder warrant for the arrest of inmate Thomas A. Kipps and Deputy Williams requested that the Administrator secure Kipps until he could arrive to make the arrest. This was done and on the subsequent day the arrest was made.

After Kipps' arrest Sheriff Keyser requested a picture be taken of Mr. Kipps for transmittal to the Sheriff's Office in another county who was investigating another incident. A copy of this picture was given to a representative of a newspaper.[4]

Subsequently a preliminary hearing was held on October 24, 1973, in the General District Court of Warren County and the Judge found probable cause to certify the case to the grand jury on November 5, 1973. The grand jury returned a true bill against Kipps in November of 1973. Kipps was tried by a jury and acquitted on January 27, 1974, after the trial judge had twice refused to strike the Commonwealth's case and after three hours of jury deliberation.

## I

The several allegations brought forth by the plaintiff are all under 42 U.S.C. § 1983. Each defendant has a qualified protection or immunity from suit under this section. Defendant John Ewell as a prosecuting attorney derives a quasi-judicial immunity. The Fourth Circuit in McCray v. State of Maryland, 456 F.2d 1 (1972) described their immunity as follows:

Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties. Where an official is not called upon to exercise judicial or quasi-judicial discretion, courts have properly refused to extend to him the protection of absolute judicial immunity, regardless of any apparent relationship of his role to the judicial system. (456 F.2d at 3)

This immunity is not total and a case indicating an example of its limitations is that of Hilliard v. Williams, 465 F.2d 1212 (6th Cir. 1972). In that case the prosecuting attorney was alleged to have deliberately suppressed an F.B.I. laboratory report that established the innocence of the defendant. The Sixth Circuit held that when the prosecutor's actions are outside his quasi-judicial capacity and beyond the scope of duties constituting an integral part of the judicial process, there is no immunity for such actions. However, the Fourth Circuit in Weathers v. Ebert, 505 F.2d 514 (1974) distinguished and limited *Hilliard,* supra, by holding that a complaint which charged that the prosecuting attorney "knew or should have know that Weathers (the defendant) had been acquitted previously of the identical offense" was not sufficient to cause a departure from the immunity doctrine. The court reasoned that the complaint's bare charges of malice were no substitutes for specific averments and that therefore no specific allegations of the malfeasance were applicable as they were in *Hilliard,* supra. The court continued on to state that:

"[M]aking an arrest is a police function, not a judicial one, and Ebert [the prosecuting attorney] would lack immunity if he were involved. Assuming, for the purpose of this decision, that the complaint alleges a violation of Weather's constitutional rights by the police, it does not connect Ebert with the arrest. His procurement of the second indictment is the

---

4. The picture appeared in the "Warren Sentinel" and shows Thomas A. Kipps in a work shirt standing in front of a brick wall, but does not show him in a prison uniform.

A headline appears next to the picture and reads "15-Year-Old-Girl's Murder Charged to Former Teacher." The "Sentinel" edition's date is October 4, 1973.

single specific allegation against him, and we concluded . . . that this was insufficient. The other allegations are only general statements that he acted in concert with others. These, unsupported by averments of communication, consultation, cooperation, or command, do not make him responsible under § 1983 for the acts of others." (505 F.2d at 517).

██ In his affidavit, the Commonwealth Attorney, John Ewell, states that he reviewed the case with Deputy Williams and made suggestions as to additional investigation, which were followed. After reviewing the evidence uncovered by Deputy Williams, Ewell then advised that probable cause existed for the arrest and trial of Thomas A. Kipps for the murder of Juana Anne Williams. The statements made by Ewell constitute the only specific demonstration of his involvement in the investigatory and arrest stages of Kipps' case. No malice or any other specific conduct has been alleged. This court cannot conclude that such action is in the nature referred to by the Fourth Circuit in *Weathers,* supra. The court sees no impropriety nor departure from his official function when a Commonwealth Attorney advises that in his legal opinion probable cause exists for the arrest of a suspect. Instead, the court views this as a safeguard preventing arrests without proper foundations. To hold that such action would fall in the very limited departure from the immunity shelter would close the prosecutor's doors to the police in seeking legal evaluation of a crucial nature. The court underscores that at no time has it been shown or specifically alleged that Ewell directed or commanded any part of the investigation and arrest of Kipps and his evaluations were mere suggestions and opinions. This court will not put an onus on such cooperation and therefore holds that under the facts of this case the Commonwealth Attorney is immune from suit under 42 U.S.C. § 1983.

## II

The actions of police officers are regarded in a different light and afforded different and more limited defenses under 42 U.S.C. § 1983. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967) the Supreme Court stated that in actions brought under § 1983: "The common law has never granted absolute and unqualified immunity." However, the court went on to pronounce that: .

"A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

The Fourth Circuit following *Pierson,* supra, announced the following test in Hill v. Rowland, 474 F.2d 1374 (1973), that a police officer has the defense of good faith and reasonable belief in the validity of the arrest.

██ After reviewing the evidence which was presented at Kipps' preliminary hearing and finding no evidence nor specific allegation to the contrary, this court finds that the police officers who are defendants in this suit did have probable cause to arrest Kipps for the murder of Juana Anne Williams. They had a written statement from his close friend and statements placing Kipps with the victim shortly before her death. Moreover, the presiding judge at the preliminary hearing found probable cause to bind Kipps over to the grand jury and the trial judge also found enough evidence at trial to refuse to strike the evidence on two occasions. The fact that Kipps was ultimately acquitted has no bearing on the probable cause at the time of his arrest.

██ The detention of Kipps by the Administrator of the Work Release Program upon a request by Deputy Williams one day prior to his arrest is also not actionable in this case. Since the court has already found that the police officers did have probable cause to ar-

rest Kipps, it would be proper for the police to warn the Work Release Administrator of their belief that Kipps had murdered Juana Anne Williams. It would be folly to allow an inmate suspected of such a crime to be at large when a warrant was about to be issued. Had Kipps not been an inmate at that time, the circumstances would be significantly altered. Here, however, he was already lawfully detained at Camp 7, and the fact that he was taken off Work Release during the day preceding his arrest works no constitutional deprivation.

### III

 The final allegation concerns the release of a pretrial statement by Deputy Williams and the release of a picture of Kipps to the local paper. The Second Circuit held in Rosenberg v. Martin, 478 F.2d 520 (1973) that the interest in privacy of a fugitive suspected of a serious crime must yield to public interest and that "in order to recover damages for the deprivation of the right to a fair trial [through publicity,] a plaintiff must show not merely that the police engaged in conduct which 'exceeded the limits of proper police procedure' and 'might have affected his right to a fair trial, as the judge instructed but that the improper conduct in fact had that result." (Id. at 525) The Ninth Circuit held in Baker v. Howard, 419 F.2d 376 (1969), that there was insufficient invasion of privacy when police officers released to a radio station a police report containing alleged libelous and false statements suggesting that the plaintiff had committed a crime. Of course there can be such gross abuse of privacy as occurred in York v. Story, 324 F.2d 450 (9th Cir. 1965), where the police photographed the plaintiff in several lewd and indecent positions. However, in the circumstances of this case no such gross abuse occurred. Nor can any denial of a fair trial be shown as the plaintiff was acquitted of the murder for which he was tried. The court holds that the statement made by Deputy Williams and the photograph released by Sheriff Key-

ser did not offend plaintiff's constitutional right to a fair trial nor his constitutional right to privacy.

### IV

For the reasons stated above and in the interest of justice this court grants summary judgment to the defendants and accordingly orders that this case be dismissed and stricken from the docket. The plaintiff is advised that he may appeal the judgment of this court to the United States Court of Appeals for the Fourth Circuit within thirty (30) days.