Ross Z. PIERPONT

v.

Milton B. ALLEN and Frederick T. Dekuyper.

Civ. No. Y–75–1846.

United States District Court, D. Maryland.

July 19, 1976.

George L. Russell, Jr., Gerald S. Klein, Baltimore, Md., for plaintiff.

Glenn W. Bell, Asst. Atty. Gen., John Henry Lewin, Jr., Charles C. Lee, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The complaint in this case contains six counts. The first two state a cause of action against defendant Allen under 42 U.S.C. § 1983. Plaintiff claims in Counts I and II that defendant Allen, while State's Attorney for Baltimore City, improperly and maliciously procured his indictment, thus infringing his liberty interests guaranteed by the Fourteenth Amendment. In Counts III and IV, plaintiff makes essentially the same claim against defendant De-Kuyper. In Count V, plaintiff alleges that the two defendants conspired to violate his rights to liberty by procuring the indictment and violating the secrecy of the grand jury. In this count, plaintiff relies on 42 U.S.C. § 1985. In Count VI, plaintiff alleges a state claim—malicious prosecution—against both defendants.

Defendants have moved to dismiss on the ground of the absolute immunity of prosecutors and grand jurors. The plaintiff and defendants have submitted factual materials outside the complaint; accordingly, the motions to dismiss will be considered as motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In early 1974, the State's Attorney's Office of Baltimore City and the grand jury were investigating the illegal prescription and distribution of proscribed drugs by Baltimore area physicians. Plaintiff, a licensed physician with political ambitions, came under the investigation. On June 26, 1974, the grand jury indicted Dr. Pierpont for unlawfully prescribing and distributing dilaudid, a Schedule II controlled dangerous substance (see Md. Annot.Code, Art. 27, § 279), to Salvatore Buscemi. On July 1, 1974, defendant Allen, by Assistant State's Attorney Joseph E. Murphy, Jr., submitted to the Criminal Court of Baltimore City a "Motion for Appropriate Relief" in which the State requested the court to determine whether the Criminal Court of Harford County had jurisdiction over the alleged offense. On July 2, 1974, plaintiff moved to dismiss the indictment and the motion was granted on the same day. Plaintiff was later indicted by the grand jury of Harford County. He was tried and acquitted before Judge Albert Close of the Circuit Court of Harford County on September 16, 1975.

## THE IMMUNITY OF PROSECUTORS

The absolute immunity of prosecutors to suits under 42 U.S.C. § 1983 for actions taken within the scope of their duties has been established conclusively by the recent case of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In that case the court reviewed the reasons for the common law immunity of prosecutors and concluded that the same reasons support *absolute* immunity for suits under section 1983:

> The common-law rule of immunity is thus well settled. We now must determine whether the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983. We think they do.

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he

were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law. [Citations and footnote omitted.]

Before the Supreme Court had an opportunity to consider the question, the United States Court of Appeals for the Fourth Circuit reached the same result. *Weathers v. Ebert,* 505 F.2d 514 (4th Cir. 1974). *See also* dictum in *McCray v. State of Maryland,* 456 F.2d 1 (4th Cir. 1972).

### THE IMMUNITY OF GRAND JURORS

■ The very same reasons and policy considerations which counsel absolute immunity for prosecutors require that protection for grand jurors as well. They too must be free to exercise their best judgment regarding sensitive legal and factual questions without fear of being held to account in damage actions. They also would have their attention and energy diverted from their official duties by lawsuits filed against them. The cases have been uniform in holding grand jurors absolutely immune from liability for acts committed within the scope of their duties. *Martone v. McKeithen,* 413 F.2d 1373, 1376 (5th Cir. 1969); *Cawley v. Warren,* 216 F.2d 74, 76 (7th Cir. 1954); *Yaselli v. Goff,* 12 F.2d 396, 403 (2nd Cir. 1926); *Palmentere v. Campbell,* 205 F.Supp. 261 (W.D.Mo.1962).

### SCOPE OF AUTHORITY

The plaintiff has alleged that the immunities enunciated above offer no protection to the defendants because they acted outside of the scope of their authority or jurisdiction. Plaintiff claims that the act for

which he was indicted, prescribing dilaudid for Buscemi, occurred in Harford County—outside of the jurisdiction of the Baltimore City State's Attorney and the Baltimore City Grand Jury. He claims that the fact that Buscemi had the prescription filled in Baltimore City is irrelevant.

Article 27 § 288(c) of the Annotated Code of Maryland (1975 Cumulative Supplement) read as follows at the time of the indictment:

(c). It is unlawful for any practitioner to prescribe, administer, manufacture, distribute, dispense, or possess any controlled dangerous substance or controlled paraphernalia except in the course of his regular professional duties, and in conformance with both the provisions of this subtitle and the standards of his particular profession . . . ..

The words "dispense," "distribute" and "deliver" are defined in Article 27 § 277 of the Code.

(k) "Dispense" shall mean to deliver a controlled dangerous substance to the ultimate user . . . pursuant to the lawful order of a practitioner . . . ..

(*l*) "Distribute" shall mean to deliver other than by dispensing a controlled dangerous substance. . . .

(i) "Deliver" or "delivery" shall mean the actual, constructive, or attempted transfer, exchange, or delivering of a controlled dangerous substance from one person to another with or without remuneration, whether or not there exists an agency relationship.

Under these provisions it is not readily apparent where (for jurisdictional purposes) the alleged crimes occurred. If prescription was the only crime, it could be argued quite forcefully that the crime was complete when the prescription was written in Harford County. However, distribution was also alleged in the indictment. It might, then, be argued that the distribution, requiring delivery, was complete only when the prescription was filled in Baltimore City. This conclusion might be even more

attractive if the prosecution believed that the plaintiff conspired with the pharmacist to fill an illegal prescription.

The ambiguities relating to jurisdiction or scope of authority do not end in Article 27. Article 10 § 34 of the Annotated Code of Maryland indicates the scope of the State's Attorney's duties.

> The State's attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State all cases in which the State may be interested.

In this section it is not entirely apparent whether the scope of the prosecutor's authority extends only to crimes committed in the appropriate subdivision or to all "cases" in the subdivision regardless of where the crime was committed.

With the facts and the state law provisions thus exposed, it must now be determined whether or not either of the defendants exceeded the scope of his authority. The courts have been reluctant to strip a judicial officer of his immunity merely because he acted in excess of his jurisdiction or authority. The leading case is *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646 (1872).

> ". . . [J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. . . . Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the

court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction . . .."

See also *Fanale v. Sheehy,* 385 F.2d 866 (2nd Cir. 1967). *Bradley,* of course, dealt with the scope of authority of a judge; but the cases have not been reluctant to apply the "excess of jurisdiction versus clear absence of jurisdiction" distinction to prosecutors as well. In *Bauers v. Heisel,* 361 F.2d 581 (3rd Cir. 1966), the court held the prosecutor immune even though he had acted "in excess" of his authority by prosecuting a juvenile as an adult. *See also Kauffman v. Moss,* 420 F.2d 1270, 1273 (3d Cir. 1970); *Clark v. Zimmerman,* 394 F.Supp. 1166, 1175 (M.D.Pa.1975) for application of the rule to prosecutors.

The policy considerations which counsel the application of the doctrine here are strong. The immunity of prosecutors exists because they must exercise the same sort of discretion which judges do:

> The immunity of . . . prosecuting attorneys . . . derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges. Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties.

*McCray v. State of Maryland,* 456 F.2d 1, 3 (4th Cir. 1972). The Supreme Court in *Bradley v. Fisher, supra,* recognized that a

judicial officer's most difficult decisions often concern the scope of his own authority.

Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . .. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit . . . applies in cases of this kind and for the same reasons.

Recognizing that prosecutors must make courageous and unencumbered decisions about the scope of their authority in close cases, it follows that they must enjoy the same absolute immunity in such cases as they enjoy in cases squarely within their scope of authority.*

■ The instant case is clearly one where the question of the prosecutor's scope of authority was a question requiring quasi-judicial discretion. The statutes are by no means clear as to the proper forum for the alleged crime, nor is it clear that the prosecutor's scope of authority is limited to crimes which occurred within his subdivision. This case would seem to be the paradigm of an instance where the scope of authority issue is so close and requires such

careful and courageous attention that the prosecutor's absolute immunity is required.

■ The considerations adduced above regarding the prosecutor's scope of authority apply with even greater force to. the members of the grand jury. They too exercise discretionary functions and part of their discretion (with the advice of the prosecutor) concerns the scope of their own authority. There is, moreover; an additional reason to find immunity for grand jurors in any close case involving scope of authority. Grand jurors are laymen and cannot be expected to understand or apply the niceties of jurisdictional doctrines. As with defendant Allen, it is overwhelmingly clear that the defendant grand juror must be held absolutely immune.

## THE GRAND JURY MINUTES

This Court's attention has been drawn to a document entitled "State's Motion for Appropriate Relief." That document was filed by the defendant with the Criminal Court of Baltimore City on July 1, 1974; the memorandum accompanying that motion seems to argue that the Criminal Court of Baltimore City did not have proper venue to

* The plaintiff has drawn the Court's attention to several cases in which prosecutors have not been shielded by immunity. In *Holton v. Boman,* 493 F.2d 1176 (7th Cir. 1974), a prosecutor was held liable for a failure to assist the plaintiff in reacquiring certain stolen property. This case can no longer be an adequate statement of law, since it accords to the prosecutor only a qualified immunity, and is clearly overruled by *Imbler v. Pachtman, supra.* In *Hilliard v. Williams,* 465 F.2d 1212 (6th Cir. 1972), `a complaint was held sufficient to withstand the defense of prosecutorial immunity because it alleged that the prosecutor willfully withheld exculpatory evidence. The case relies upon the Code of Professional Responsibility to conclude that such action is beyond the scope of the prosecutor's authority. To the extent that it relies on the bad ethics (*i. e.,* bad faith) of the prosecutor, it gives him only a qualified immunity and must be overruled by *Imbler.* The alternate basis for the holding—that the scope of authority (*i. e.,* power to act) is limited by codes of prosecutorial ethics—will not pass muster. What is or is not exculpatory evidence is once again a question of judgment.or discre-

tion. Absolute immunity would be of little use to prosecutors or the courts if an allegation of unethical conduct were sufficient to take the case beyond the pleadings. The other two cases, *Robichaud v. Ronan,* 351 F.2d 533 (9th Cir. 1965); *Lewis v. Brautigam,* 227 F.2d 124 (5th Cir. 1955), involve action by prosecutors more nearly akin to police action, *e. g.,* coercion of confessions and illegal confinements. In these cases the courts held that the prosecutors were acting not in their role as judicial officers but as policemen and should have only that immunity which police have. These two cases stand for the broad general principle that a prosecutor, while acting in his discretionary, quasi-judicial capacity enjoys absolute immunity; but in his investigatory capacity, acting as would a police officer, he enjoys only qualified immunity. *See also Apton v. Wilson,* 165 U.S. App.D.C. 22, 506 F.2d 83, 91 (1974); *Guerro v. Mulhearn,* 498 F.2d 1249, 1256 (1st Cir. 1974). The Court need not now decide whether this general principle survives *Imbler,* since the principle has no application to the instant case. Defendant Allen acted in his discretionary, quasi-judicial role and not as a policeman.

try plaintiff's alleged offenses and that the proper venue existed in Harford County. Plaintiff draws the inference from this memorandum that defendant knew that the indictment was beyond the scope of his authority.

Pursuant to the order of Chief Judge Anselm Sodaro of the Supreme Bench of Baltimore City, this Court has been furnished with a copy of the grand jury minutes for the day on which the indictment was returned. This Court's *in camera* review of the grand jury minutes clearly rebuts plaintiff's inference and shows, furthermore, that both the State's Attorney and the grand jury operated in complete good faith in the instant case. The minutes indicate that initially the prosecutors assigned to the grand jury believed that Dr. Pierpont had conspired with a Baltimore pharmacist to illegally distribute dilaudid. Their belief was based upon Salvatore Buscemi's testimony that Pierpont had told him to get the prescription filled at a particular drugstore in Baltimore City. On these facts, the prosecutors believed they could prove a distribution charge against Dr. Pierpont; they also believed that venue and jurisdiction existed in Baltimore City. Shortly before the indictment was returned, Buscemi changed his story. He no longer indicated that Dr. Pierpont had sent him to the particular pharmacy; that was his own idea. The prosecutors no longer believed that there was a provable case against Dr. Pierpont for distribution. They thought there was a provable violation of Art. 27 § 288(c) of the Maryland Annotated Code for an improper prescription, but they thought that venue for that violation existed only in Harford County. The members of the grand jury were confused by the change in the prosecutor's views. They were unable to understand why indictments should be returned against other doctors that had been investigated, but not against Dr. Pierpont. They felt that the prosecution was being subjected to political pressure to drop the charges against Dr. Pierpont. Therefore, despite the recommendations of defendant Allen and his staff, they voted for the indictment. This Court can discern no action in excess of authority on the part of the prosecutors. They carefully advised the grand jury as to the evidentiary and procedural difficulties with the case against Dr. Pierpont. Such advice was clearly within the scope of their authority. The grand jury's actions were also within the scope of their authority. They conceived their action to be within their duty to determine probable cause; their disregard of the prosecution's advice shows no attempt to act beyond their authority, but rather an attempt to avoid what they perceived to be the political quashing of an otherwise proper indictment.

From an examination of the relevant state statutes, the indictment and the grand jury minutes, it is clear that the defendants in this case must prevail on the defense of absolute immunity. There is no dispute as to any fact material to this issue.

Accordingly, it is this 19th day of July 1976, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendants' motions for summary judgment be, and the same are, hereby granted; and

2. That judgment be entered in favor of each defendant.