**Roland Lee KELLY, Sr., Plaintiff,**

v.

**Robert BENCHECK, et al., Defendants.**

**No. 3:94–CV–51–BR2.**

United States District Court,
E.D. North Carolina,
Western Division.

April 10, 1996.

J. Michael McGuinness, McGuinness & Parlagreco, Elizabethtown, NC, Ronald D. McSwain, Boose & McSwain, Fayetteville, NC, for Roland Lee Kelly, Sr.

James R. Nance, Jr., Reid, Lewis, Deese, & Nance, Fayetteville, NC, for Robert Bencheck.

Rudolph G. Singleton, Jr., Singleton, Murray, Craven & Inman, Fayetteville, NC, for Bradley R. Chandler.

Richard B. Glazier, Fayetteville, NC, William O. Richardson, Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, Fayetteville, NC, Carl J. Milazzo, Fayetteville, NC, for William Britton.

## ORDER

BRITT, District Judge.

Before the court is defendants' motion for summary judgment. Plaintiff responded to the motion, and defendants replied. This matter is thus ripe for disposition.

## I.  FACTS

At approximately 9:00 p.m. on 2 July 1993, officers of the Fayetteville Police Department were in the process of conducting a prostitution "sting" operation. A female undercover officer was stationed across the street from plaintiff's property, a used car lot, on Bragg Boulevard in Fayetteville. Defendant Robert Bencheck, an officer who was wearing "street" clothes, entered plaintiff's property to engage in surveillance of the undercover officer. Neither Bencheck nor anyone else from the Police Department obtained plaintiff's permission to enter the property.

Approximately five to ten minutes after Bencheck entered the property, plaintiff and his wife were driving by the property on their way home. Plaintiff, who was not driving, saw a person (Bencheck) on the lot. The lot was closed for business. When plaintiff saw the figure on the lot, he became concerned, as there previously had been burglaries and vandalism on the lot. On one such occasion, in 1991, burglars assaulted plaintiff's son with a monkey wrench and seriously injured him.

After seeing Bencheck, plaintiff had his wife turn the car around and pull onto a neighboring car lot. Plaintiff removed a gun he was carrying from its holster, walked onto his property, and approached Bencheck. There is some dispute as to whether plaintiff actually pointed the gun at Bencheck; however, it is undisputed that plaintiff displayed his gun during the entire encounter with Bencheck. Bencheck told plaintiff he was a police officer and ordered him to drop his weapon. Plaintiff did not do so. Bencheck handed plaintiff his Fayetteville City Police badge, which plaintiff read. This encounter between plaintiff and Bencheck lasted approximately two minutes.

Defendants Bryant and Flannery were the first officers to arrive on the scene. Each was in uniform and in marked vehicles with the blue lights activated. Flannery yelled to plaintiff to drop the gun. Bryant, Flannery, and Bencheck attempted to get the gun away from plaintiff. The three officers pushed plaintiff to the ground and then handcuffed him. In the process, plaintiff received a cut on his knee, "scuff marks" on his head and arm, bruises on his left side, and "marks" on his wrists.

Plaintiff was subsequently taken to the law enforcement center, arrested, and charged with assault with a firearm on a law enforcement officer. At plaintiff's criminal trial, a jury acquitted him of the charge.

Plaintiff alleges violations of 42 U.S.C. § 1983, the North Carolina Constitution, and North Carolina statutory and common law. Plaintiff seeks compensatory and punitive damages of $2 million.

## II.  DISCUSSION

Summary judgment is appropriate if the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Fourth Circuit has articulated the summary judgment standard as follows:

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255, 106 S.Ct. at 2513–14. The plaintiff is entitled to have the credibility of all his evidence presumed. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The op-

posing party must demonstrate that a triable issue of fact exists; he may not rest on mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Patterson v. McLean Credit Union,* 39 F.3d 515, 518 (4th Cir.1994) (quoting *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994)).

▬▬ With respect to section 1983 claims, the Supreme Court has recognized that "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). "A section 1983 action . . . is not predicated on the legality or illegality of an act under state law, but on whether that act deprives an individual of 'rights, privileges, or immunities secured by the federal Constitution and laws.'" *Clipper v. Takoma Park, Md.,* 876 F.2d 17, 19 (4th Cir.1989) (quoting 42 U.S.C. § 1983). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright,* 510 U.S. at ——, 114 S.Ct. at 811. The court will now examine each of the claimed constitutional violations in turn.

### A. *Trespass* [1]

▬▬ At the outset, the court must address the common law of trespass as it relates to plaintiff's section 1983 claim. Trespass, while actionable under state law, does not in and of itself constitute a constitutional violation, even when the trespass is committed by a governmental actor. *Andree v. Ashland County,* 818 F.2d 1306, 1315 (7th Cir.1987); *Wise v. Bravo,* 666 F.2d 1328, 1335 (10th Cir.1981); *Light v. Blackwell,* 472 F.Supp. 333, 337 (E.D.Ark.1979), *aff'd,* 620 F.2d 307 (8th Cir.1980) (table); *Pennsylvania ex rel. Feiling v. Sincavage,* 313 F.Supp. 967, 970 (W.D.Pa.1970), *aff'd,* 439 F.2d 1133 (3d Cir. 1971); *see also Oliver v. United States,* 466 U.S. 170, 183–85, 104 S.Ct. 1735, 1744, 80 L.Ed.2d 214 (1984) ("The law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not otherwise proscribe. For trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest."); *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 394, 91 S.Ct. 1999, 2003, 29 L.Ed.2d 619 (1971) ("The interest protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile."). Thus, plaintiff's section 1983 claim cannot rest solely on the fact that defendants trespassed on his property. Plaintiff, however, argues defendants' conduct implicates the Fourth Amendment.

▬▬ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. The Fourth Amendment's protections apply not only to private residences but also extend to commercial properties. *United States v. Hall,* 47 F.3d 1091, 1094 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995). Initially, the issue here is whether defendants' entering onto plaintiff's property constituted a search or a seizure. The Supreme Court has defined these two types of expectations as follows:

A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs where there is some meaningful interference with an individual's possessory interests in that property.

*Soldal v. Cook County, Ill.,* 506 U.S. 56, 63, 113 S.Ct. 538, 544, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)).

▬▬ With respect to a search, Fourth Amendment analysis focuses on "whether a

---

1. The court has classified each of the alleged constitutional violations according to the underlying common law tort purely for organizational purposes. By doing so, it is not meant to convey the suggestion that section 1983 liability is being imposed for the violation of any duty under state tort law.

person has a 'constitutionally protected reasonable expectation of privacy.' The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation(s) that society is prepared to recognize as reasonable.'" *Oliver*, 466 U.S. at 178, 104 S.Ct. at 1741 (quoting *Katz v. United States*, 389 U.S. 347, 360, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)). This concept of a "reasonable expectation of privacy" "embodies an effort to divorce the fourth amendment 'search' from common-law notions of technical trespass—to emphasize the amendment's protection of 'rights rather than places.'" *Tarantino v. Baker*, 825 F.2d 772, 775–76 (4th Cir.1987) (citing *Katz* ). As to commercial property, the Fourth Circuit has recognized that a lesser privacy interest is involved than with one's residence. *Id.* at 778. For that reason, "[t]he occupant of a commercial building must take the *additional* step of affirmatively barring the public from the area because a business operator has a reasonable expectation of privacy only in those areas from which the public has been excluded." *Id.* (quoting *United States v. Dunn*, 480 S.Ct. 294, 316, 107 S.Ct. 1134, 1147, 94 L.Ed.2d 326 (1987) (Brennan, J., dissenting)). Such steps include posting signs and erecting barricades. *See Hall*, 47 F.3d at 1096.

■ In the instant case, plaintiff did not sufficiently restrict the public's access to the car lot, and thus, he did not possess a reasonable expectation of privacy in the lot. According to plaintiff, the entrances and exits of the lot were blocked off with parked cars. (Kelly Aff. ¶ 6; Tr. at 55.) However, the lot was lit (either naturally or artificially), (*see* Tr. at 9), and plaintiff acknowledges that members of the public come onto the lot "at all times of the day" to look at vehicles, (*id.* at 55). Although plaintiff does state that "a no trespassing sign was prominently displayed on the premises," (Kelly Aff. ¶ 6), plaintiff does not mention the location of the sign. Defendants have submitted an exhibit, without objection from plaintiff, which shows that the sign is displayed on a fence at the rear of the lot; the fence apparently bounds another lot. (*See* Defs.' Mem.Supp. Summ.J.Ex. 2; Tr. at 261–63.) Further, Bencheck testified that he never saw any

such sign. (Tr. at 10.) This evidence establishes that one might reasonably expect members of the public to be on the lot outside normal business hours, particularly given the nature of plaintiff's business, the fact that the area was lit, and the fact that the lot, except for the placement of cars thereon, was otherwise open. As such, a search implicating the Fourth Amendment's protection did not occur.

Plaintiff's claim fails under a "seizure" analysis as well. Defendants did not exercise control over plaintiff's property or otherwise dispossess plaintiff of his property. Defendants did not prevent plaintiff from entering his property. Defendant Bencheck had been on the property only a few minutes before plaintiff approached him. The entering of plaintiff's property does not rise to the level of a "meaningful interference" necessary to implicate the Fourth Amendment.

Because neither a search nor a seizure for Fourth Amendment purposes occurred, defendants' motion for summary judgment as to plaintiff's trespass claim is ALLOWED.

### B. *False Arrest*

■ Plaintiff argues that because there was no probable cause to arrest him, his arrest was unlawful and in violation of his Fourth Amendment rights. As stated by the Fourth Circuit:

> Under the fourth amendment, probable cause for arrest "exists where the facts and circumstances within (the officer's) knowledge and of which (he) had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Clipper*, 876 F.2d at 19 (quoting *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979)). Whether or not the plaintiff was ultimately acquitted at his criminal trial is irrelevant to the probable cause determination. *Kipps v. Ewell*, 391 F.Supp. 1285, 1289 (W.D.Va.1975), *aff'd*, 538 F.2d 564 (4th Cir.1976). In addition, while probable cause in a section 1983 action is an "affirmative defense which may be properly raised before a jury," summary

judgment is not precluded, provided there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Kipps*, 538 F.2d at 566.

In this case, plaintiff was arrested for assault with a firearm on a police officer in violation of N.C.Gen.Stat. § 14–34.2. This crime is a felony. Knowledge is an element of the crime; the defendant must have known or had reasonable grounds to know that the victim was a police officer. *North Carolina v. Teasley*, 82 N.C.App. 150, 346 S.E.2d 227, 235 (1986), *review denied*, 318 N.C. 701, 351 S.E.2d 759 (1987). Upon a review of the evidence submitted by defendants, probable cause supported plaintiff's arrest for this crime.

■ While many facts concerning the extent of the confrontation between plaintiff and Bencheck are disputed, the following facts are not. On the evening of 2 July 1993, Bencheck, dressed in "street" clothes, was dropped off at plaintiff's property to engage in surveillance of a female undercover officer. (Tr. at 8, 11.) After Bencheck had been on the property several minutes, plaintiff, holding a small-caliber semi-automatic pistol, approached Bencheck. (*Id.* at 13–14, 47–48.) Bencheck informed plaintiff that he was a police officer, (*id.* at 57, 59, 60, 224, 247), and ordered plaintiff to drop his gun, (*id.* at 16). Plaintiff apparently did not believe that Bencheck was a police officer. Plaintiff looked at Bencheck's badge and read "Fayetteville City Police" thereon. (*Id.* at 15, 32, 38, 57–58, 60, 225, 248.) Plaintiff held his gun during the entire time he spoke with Bencheck and did not drop it when Flannery and Bryant arrived. (*Id.* at 19–20, 109–11, 130–32, 225–26, 229, 250.) Bencheck testified that he feared for his life and of getting shot. (*Id.* at 18, 34, 83, 96–97.) Under such circumstances, probable cause existed to arrest plaintiff for committing an assault with a firearm against an officer. Therefore, defendants' motion for summary judgment as to plaintiff's section 1983 claim based on arrest without probable cause is ALLOWED.

### C. *Malicious Prosecution*

■ As with a purported trespass claim, to assert a claim under section 1983, the plaintiff must allege he suffered a deprivation of a constitutional right, rather than rest on the allegation that the defendants committed the common law tort of malicious prosecution. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir.1981) (per curiam); *see also Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir.1991) ("[I]t has been repeatedly emphasized that what are essentially state false arrest and imprisonment claims are not to be entertained in federal court under § 1983."). *But see Morrison v. Jones*, 551 F.2d 939, 940 (4th Cir.1977) (holding the plaintiff's § 1983 claim "is analogous to an action for malicious prosecution"). Further, "an individual alleging he was prosecuted in the absence of probable cause states no substantive due process claim. Such a claim … can only be judged upon the Fourth Amendment." *Wilkes v. Young*, 28 F.3d 1362, 1364 n. 2 (4th Cir.1994) (citing *Albright*, 510 U.S. at ————, 114 S.Ct. at 810–12), *cert. denied*, —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995). Plaintiff's Fourth Amendment claim necessary rests, at least in part, on the alleged arrest without probable cause. *See Albright*, 510 U.S. at ——, 114 S.Ct. at 813. Yet, arguably plaintiff could also challenge his continued seizure where the officer has maintained and reinforced the unlawful hauling of the plaintiff into court and perpetuated the Fourth Amendment violation. *Id.* at ——, 114 S.Ct. at 816 (Ginsburg, J., concurring). Such a situation might occur where a police officer withholds exculpatory information from the prosecutor while urging that the prosecution should go forward, *see Goodwin v. Metts*, 885 F.2d 157, 162–63 (4th Cir.1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990), or where the officer gave misleading testimony at a preliminary hearing, *see Albright*, 510 U.S. at ——, 114 S.Ct. at 816 (Ginsburg, J., concurring).

As discussed *supra*, probable cause existed to arrest plaintiff, and thus an unlawful arrest under the Fourth Amendment did not occur. Plaintiff appears to allege that there was some misconduct on the part of the officers in allowing the prosecution to continue. In the context of his malicious prosecution claim, plaintiff states that "[o]bviously

the purported probable cause found by the magistrate was tainted by the erroneous information submitted by the Defendants who had charged Mr. Kelly [plaintiff] as a part of their efforts to cover themselves for the underlying misconduct." (Pl.'s Resp.Summ.J. at 15.) Any misconduct on the part of defendants is not "obvious" to the court, and plaintiff has failed to cite *any* evidence to support this theory. Thus, plaintiff's malicious prosecution claim alleges nothing more than his false arrest claim. Accordingly, defendants' motion for summary judgment as to plaintiff's section 1983 claim based on malicious prosecution is ALLOWED.

### D. *Remaining Claims*

■■■ Plaintiff claims that he has asserted a substantive due process claim, and that by defendants' failure to argue it in the instant motion, defendants have waived any argument thereon. While plaintiff may have a point as far as waiver is concerned, it is not so clear that plaintiff in fact alleged any violation(s) of substantive due process in his complaint. At any rate, even assuming plaintiff raised such claim, defendants' conduct does not constitute a substantive due process violation.[2]

■■■ Substantive due process is a far narrower concept than procedural due process. *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 27 (1995). "[T]he doctrine of substantive due process is a constitutionally imposed limitation, which is intended only to prevent government from abusing its power, or employing it as an instrument of oppression." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 828 (4th Cir.1995) (citations omitted). The protection of substantive due process "covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstances or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Id.* at 827 (citation omitted). Defendants' conduct here simply does not so "shock the

conscience" as to give rise to a substantive due process violation. *See Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 723 (4th Cir.1991) (adopting a "shock the conscience" standard in the context of police chase cases), *cert. denied*, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Also, based on the Supreme Court's decision in *Albright* applying the principle established in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims,'" 510 U.S. at ——, 114 S.Ct. at 813 (quoting *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871), it is unlikely plaintiff even has a claim cognizable under substantive due process.

Defendants have also moved for summary judgment on the basis that the force used to arrest plaintiff was not excessive. It is not clear, even liberally construing the complaint, whether plaintiff alleged any excessive force claim. Even so, plaintiff made no argument with respect to this issue in response to defendants' motion. Thus, the court assumes plaintiff has abandoned the claim to the extent it was ever alleged.

Because the court finds that no constitutional violations occurred, the City of Fayetteville cannot be held liable, and the section 1983 claim against it is DISMISSED.

Inasmuch as plaintiff alleges defendants' actions amount to the violation of state law, the court declines to exercise jurisdiction over such claims. *See Torchinsky*, 942 F.2d at 264 (holding the district court appropriately declined jurisdiction over pendent state law claims in section 1983 action); *Thompson v. Prince William County*, 753 F.2d 363, 365 (4th Cir.1985) (same).

### III. *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is ALLOWED.

---

2. Although defendants did not brief this issue with respect to summary judgment, plaintiff argued against summary judgment on the claim.

By doing so, plaintiff was given an opportunity to be heard, and the court reviews the appropriateness of summary judgment as to this claim.

Plaintiff's section 1983 claim is DISMISSED WITH PREJUDICE, and plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. Accordingly, this action is DISMISSED.